# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

GEORGE JOHN GEARING,  )  CASE NO. 1:18CV02841
  )
  Plaintiff,  )  JUDGE PATRICIA A. GAUGHAN
  )
  v.  )  MAGISTRATE JUDGE
  )  JONATHAN D. GREENBERG
ANDREW SAUL,  )
  )
  Commissioner  )
  of Social Security,  )  **REPORT AND**
  )  **RECOMMENDATION**
  Defendant.

Plaintiff, George John Gearing, ("Plaintiff" or "Gearing"), challenges the final decision of

Defendant, Andrew Saul,[1] Commissioner of Social Security ("Commissioner"), denying his

application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42

U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act").  This Court has jurisdiction pursuant to 42 U.S.C. §

405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic

referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth

below, the Magistrate Judge recommends that the Commissioner's final decision be VACATED and

REMANDED for further consideration consistent with this opinion.

---

[1] On June 17, 2019, Andrew Saul became the Commissioner of Social Security.

1

# I.  PROCEDURAL HISTORY

In February 2013, Gearing filed an application for DIB, alleging a disability onset date of August 27, 2011 and claiming he was disabled due to lumbar disc disease with back and leg pain and muscle spasms, low back pain, frequent falls, depression and anxiety, and hypertension.  (Transcript ("Tr.") 197-98, 215.)  The application was denied initially and upon reconsideration, and Gearing requested a hearing before an administrative law judge ("ALJ").  (*Id.* at 30.)

On February 26, 2015, an ALJ held a hearing, during which Gearing, represented by a non-attorney representative, and an impartial vocational expert ("VE") testified.  (*Id.*)  On May 1, 2015, the ALJ issued a written decision finding Gearing was not disabled.  (*Id.* at  37.)  The ALJ's decision became final on August 19, 2016, when the Appeals Council declined further review.  (*Id.* at 1-7.)  Gearing, through counsel, appealed that decision to this Court, which remanded the case as a result of the ALJ's failure to provide "sufficiently specific reasoning" to support the weight assigned to the opinion of treating physician Dr. Kurtz.  *Gearing v. Berryhill*, No. 1:16cv2440, 2017 WL 3575765 (N.D. Ohio July 31, 2017), *report and recommendation adopted by* 2017 WL 3537601 (N.D. Ohio Aug. 17, 2017).

The same ALJ heard the case on remand on April 10, 2018.[2]  (Tr. 523-66.)  On August 22, 2018, the ALJ issued a written decision finding Gearing was not disabled.  (*Id.* at 498-517.)  Given the earlier federal court remand, the Social Security Agency ("SSA") allowed Gearing to bypass the Appeals Council and present his case for judicial review.  (*Id.* at 495-96.)

On December 11, 2018, Gearing filed his Complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 11, 13, 14.)

---

[2] Counsel represented Gearing at this hearing.  (Tr. 498.)

Gearing asserts the following assignments of error:

> (1)  The ALJ again improperly rejected the opinion of the treating specialist.
>
> (2)  The ALJ was not properly appointed under the United States Constitution at the time he heard the case.
>
> (3)  SSA failed to meet its [S]tep 5 burden because the VE's testimony was not time-relevant.
>
> (4)  An outright award is appropriate given the particular circumstances of this case.

(Doc. No. 11.)

## II.   EVIDENCE

### A.   Personal and Vocational Evidence

Gearing was born in March 1964 and was 49 years-old on the date last insured (Tr. 515), making him a "younger person" at all times relevant to his claim under social security regulations. *See* 20 C.F.R. § 404.1563(c).  He has a limited education and is able to communicate in English.  (Tr. 516.)  He has past relevant work as a locomotive mechanic.  (*Id*. at 515.)

### B.   Medical Evidence During the Relevant Period[3]

During the period relevant to his claim,[4] Gearing sought treatment from neurologist Lisa

---

[3] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs, with the exception of the discussion of Dr. Kurtz's 2018 opinion.

[4] In order to be eligible for disability insurance benefits under Title II of the Social Security Act, a claimant must present evidence that his disability existed prior to the expiration of his insured status (date last insured).  *See* 42 U.S.C. § 423(c). In this case, Plaintiff's insured status expired March 31, 2013.  (Tr. 501.)  Accordingly, in order to be eligible for Title II disability benefits, Plaintiff must demonstrate that his disability began before March 31, 2013.  Because Plaintiff alleged his disability began on August 27, 2011, the relevant period under review for Plaintiff's claim is from August 27, 2011 to March 31, 2013.  (*Id.*)

Kurtz, M.D. on three occasions.  (Tr. 240-44, 491-94.)  On November 22, 2011, Gearing complained that earlier in the week his leg suddenly went numb and he almost fell over.  (*Id.* at 242.)  Dr. Kurtz noted Gearing had a history of lumbar disc disease, and she observed that Gearing had an antalgic gait.  (*Id.*).  On May 10, 2012, Gearing complained that he had been falling a lot, that he had trouble walking, and that he was experiencing more weakness than pain in his legs.  (*Id.* at 241.)  In one instance, his leg reportedly went out and he fell into his dresser.  (*Id.*)  On November 22, 2012, Gearing complained that his legs were bothering him and that he had fallen a few times.  (*Id.* at 240.)  He reported pain, weakness, and sometimes numbness.  (*Id.*)

**C.      Medical Evidence After the Relevant Period**

On July 8, 2013, Dr. Kurtz completed a questionnaire on Gearing's behalf.  (*Id.* at 259-60.)  Dr. Kurtz indicated that she had been treating Gearing since September 2008.  (*Id.* at 259.)  She diagnosed low back pain, lumbar degenerative disc disease, and leg pain.  (*Id.*)  Clinical findings included antalgic gait with use of a cane.  (*Id.*)  Dr. Kurtz noted symptoms of fatigue, pain, balance problems, weakness, unstable walking, numbness/tingling/sensory disturbance, and increased muscle tension.  (*Id.*)  Dr. Kurtz opined that Gearing needed an assistive device to walk more than five feet due to balance problems and lower extremity weakness.  (*Id.*)  She also opined that, on average, Gearing was likely to be absent from work more than three times a month due to complications from his impairment or to receive necessary medical treatment.  (*Id.* at 260).  In addition, it was Dr. Kurtz's opinion that Gearing's fatigue, weakness, or pain was sufficiently severe to interfere often with his attention and concentration.  (*Id.*)  Dr. Kurtz concluded that Gearing was not able to work. (*Id.*)

On August 22, 2013, Plaintiff again complained of leg and back pain.  (*Id.* at 494.)  He

4

reported to Dr. Kurtz that he had trouble getting dressed that day and has "off and on days."  (*Id.*) He also complained that the medication he was taking at the time was not much help if his back was hurting badly and he was considering going to a pain clinic in the winter.  (*Id.*)  On exam, Dr. Kurtz noted no neurological changes and that Gearing was not using a cane that day.  (*Id.*)

An October 2013 MRI of Plaintiff's lumbar spine showed degenerative changes in the lumbar spine, most marked at L4-L5 and L5-S1.  (*Id.* at 436-38.)  A thoracic spine MRI from the same month showed mild degenerative changes.  (*Id.* at 439-40.)  A physical examination on October 28, 2013 revealed intact muscle strength in the left upper extremity, no asymmetrical weakness in his bilateral lower extremities, discomfort to palpation in the low back, no significant tenderness by percussing, decreased pinprick sensation in his bilateral lower extremities, and decreased vibration pinprick sensation distal to proximal distribution in the lower extremities.  (*Id.* at 302.)  His gait was not tested at that time.  (*Id.*)

On March 20, 2018, Dr. Kurtz completed another questionnaire Gearing's behalf.  (*Id.* at 693-96.)  She diagnosed lumbar disc herniation at L4-L5, lumbar disc bulging at L5-S1, low back pain, and leg pain.  (*Id.* at 693.)  Dr. Kurtz opined that Gearing could sit, stand, and walk for less than two hours a day, intermittently.  (*Id.*)  Gearing would need to shift positions at will, and would need to take unscheduled breaks.  (*Id.*)  Gearing could only rarely lift less than 10 pounds, and never more than 10 pounds.  (*Id.* at 694.)  He could never crouch, stoop (bend), or kneel, and could only rarely twist and climb stairs.  (*Id.*)  Dr. Kurtz also opined that Gearing would be off task 25% or more of the work day, and on average he was likely to be absent from work more than four times a month due to complications from his impairment or to receive necessary medical treatment.  (*Id.* at 694-95.) Dr. Kurtz concluded that Gearing "has severe physical limitations due to his lumbar disc herniation

at L4-L5 and lumbar disc bulging at L5-S1, which severely limits his work abilities and precludes his ability to work." (*Id.* at 696.)

**D.      State Agency Reports**

On July 11, 2013, state agency physician, Dr. Leslie Green, M.D., reviewed Gearing's medical record and concluded that an ALJ's formulation of Plaintiff's RFC for a previously adjudicated period (decision date: August 26, 2011) should be adopted based on Acquiescence Ruling (AR) 98-4(6) ("*Drummond* Ruling").[5]  (Tr. 141-42.)  Dr. Green accordingly opined that Gearing was able to perform sedentary work; was unable to use ladders, ropes, or scaffolds; and could occasionally climb stairs or ramps.  (Tr. 142).

**D.      Hearing Testimony**

During the April 10, 2018 hearing, Gearing testified to the following:

- He hurt his back in 2007 and has been unable to work since that time because of pain in his lower back and legs.  (*Id.* at 551-52.)

- He had one "good day" a week when he was able to do some work around the house and visit his mother at a nursing home.  (*Id.* at 539-40.)

---

[5] Gearing argues that on remand, the ALJ concluded this was error (Doc. No. 11 at 5), relying on the following language in the ALJ's opinion:

> Upon careful consideration of the medical evidence, the undersigned finds that new and material evidence was submitted after the prior administrative law judge's decision, that shows the claimant's residual functional capacity has decreased from a worsening of the claimant's same severe impairments, and he had an additional non-exertional limitation, as explained in this decision, for the relevant period from August 27, 2011 to March 31, 2013.  (See Prior ALJ Decision B1A).  Also, as to the claimant's past relevant work, the record does not contain new and material evidence.  Accordingly, the undersigned applied *res judicata* as to the claimant's past relevant work, and he did not apply *res judicata* to the claimant's residual functional capacity finding, as explained in this decision.

(Tr. 498-99.)

- On "bad days," he was unable to do anything and stayed home all day.  (*Id.*)

- When his symptoms were really bad, he got burning sensation in his lower back that would shoot down into his legs.  (*Id.* at 539.)

- He used a cane when he needed to stand up or walk for long periods of time.  (*Id.* at 542.)  He usually did not use a cane at home.  (*Id.*)

- He started using a cane eight years ago.  It had not been prescribed to him.  (*Id.* at 532-33.)

- He could not ride in a car for very long because he needed to take breaks.  (*Id.* at 548-49.)

- He did shop on his own for small bags of groceries.  (*Id.*)

- He hired out his yardwork.  (*Id.* at 535.)

- His pain interfered with his daily activities, and prevented him from riding his motorcycle and going on vacations.  (*Id.* at 553-54.)

- His pain made it difficult to sleep.  (*Id.* at 553.)

- He alternated between Soma and Flexeril for his pain because after a while one would stop working.  (*Id.* at 542-43.)  He only took these medications as needed – he did not take them every day.  (*Id.* at 545.)  If he was having a bad day, he would take one of these medications at night to help him sleep.  (*Id.*)  He did take two Aleve every morning.  (*Id.* at 543-44.)

- He tried physical therapy and injections, but neither worked.  (*Id.* at 537-38.)

- He had wanted to try aqua therapy, but he could not afford it.  (*Id.* at 556.)

- He did not want to have surgery on his spine as he was afraid of the risks.  (*Id.* at 549-51.)

The VE testified Gearing had past work as a locomotive mechanic.  (*Id.* at 561.)  The ALJ then posed the following hypothetical question:

> In this hypothetical, I'd like you to assume that the individual having the claimant's same age, education, and vocational background is limited to work at the sedentary exertional level,

7

> meaning that person can lift, carry, push or pull 20 pounds – I'm
> sorry, 10 pounds occasionally and less than that frequently.  That
> person can stand or walk for two hours out of an eight-hour
> workday and can sit for six hours out of an eight-hour workday,
> except that individual cannot climb ladders, ropes, or scaffolds.
> That person can only occasionally climb stairs and ramps.  That
> person cannot work at unprotected heights.

(*Id.* at 562.)

The VE testified the hypothetical individual would not be able to perform Gearing's past work as a locomotive mechanic.  (*Id.*)  The VE further explained the hypothetical individual would be able to perform other representative jobs in the economy, such as electronics assembler, charge account clerk, and bench assembler.  (*Id.* at 563.)  Use of a cane for ambulation would not change the VE's testimony in response to the ALJ's hypothetical.  (*Id.* at 564.)

### III.    STANDARD FOR DISABILITY

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4).  *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010);  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of

disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. §§ 404.1520(d) *and* 416.920(d).  Fourth, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

Here, Gearing was insured on his alleged disability onset date, August 27, 2011, and remained insured through March 31, 2013, his date last insured ("DLI").  (Tr. 501.)  Therefore, in order to be entitled to DIB, Gearing must establish a continuous twelve month period of disability commencing between these dates.  Any discontinuity in the twelve month period precludes an entitlement to benefits.  *See Mullis v. Bowen*, 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

### IV.   SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.      The claimant last met the insured status requirements of the Social Security Act on March 31, 2013.

2.      The claimant did not engage in substantial gainful activity during the period

9

from his alleged onset date of August 27, 2011 through his date last insured of March 31, 2013 (20 CFR 404.1571 *et seq.*).

3.   Through the date last insured, the claimant had the following severe impairments: degenerative disc disease and herniated disc (20 CFR 404.1520(c)).

4.   Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.   After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant cannot use ladders, ropes, or scaffolds; he can occasionally climb stairs or ramps; and he is unable to work at unprotected heights.

6.   Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.   The claimant was born on March **, 1964 and was 49 years old, which is defined as a younger individual age 45-49, on the date last insured (20 CFR 404.1563).

8.   The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11.   The claimant was not under a disability, as defined in the Social Security Act, at any time from August 27, 2011, the alleged onset date, through March 31, 2013, the date last insured (20 CFR 404.1520(g)).

(Tr. 501-17.)

## V.  STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. April 1, 2011).   Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.  *See Ealy*, 594 F.3d at 512; *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d

11

1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied.  Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal.  *See, e.g.,White*, 572 F.3d at 281; *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996); accord *Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-cv-734, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  ANALYSIS

The Court addresses Gearing's Appointments Clause challenge first, and then addresses the merits raised by Gearing's other assertions of error.

**A.**     **Appointments Clause Challenge**

Gearing asserts, in light of the Supreme Court's decision in *Lucia v. S.E.C.*, 138 S. Ct. 2044

12

(2018), that the ALJ who conducted his hearing was not properly appointed under the Constitution's Appointments Clause at the time of his hearing and therefore did not have legal authority to preside over his case.  (Doc. No. 11 at 6.)  Gearing maintains that SSA "has never contested the fact that its ALJs were not properly appointed" before July 16, 2018, but rather "uniformly offers only a technical defense of issue exhaustion with respect to ALJs it admits were constitutionally illicit . . . ."  (*Id.* at 7.)

Gearing advances five arguments to support his claim that SSA's exhaustion/forfeiture defense is unavailing: (1) Social Security Ruling ("SSR") 19-1p bars SSA from arguing a claimant forfeits an Appointments Clause challenge by failing to raise it before the ALJ because the SSR "explicitly states that relief will be granted on this issue even if the challenge was not raised before the ALJ"; (2) the petitioner in *Lucia* never raised an Appointments Clause challenge at the ALJ level;[6] (3) under the Supreme Court's decision in *Sims v. Apfel*, 530 U.S. 103 (2000), "ALJ level issue exhaustion/forfeiture should not be applied"; (4) under the Supreme Court's decision in *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868 (1991), "structural constitutional objections" such as Appointments Clause challenges "may be considered on appeal to federal court regardless of whether they were raised during the administrative process below"; and (5) under the Supreme Court decision in *Mathews v. Eldridge*, 424 U.S. 319 (1976), "a Social Security claimant is not barred from raising a constitutional claim for the first time on appeal to a federal court because SSA has no power to adjudicate such a challenge and the topic is inherently beyond the scope of the administrative proceeding."  (Doc. No. 11 at 7-9.)

---

[6] While technically correct, the petitioner in *Lucia* raised his Appointments Clause challenge before the agency during review of the ALJ's decision. 138 S. Ct. at 2050. Therefore, *Lucia* does not excuse Gearing's failure to raise the issue before the ALJ.

13

The Commissioner argues Gearing forfeited his Appointments Clause challenge by failing to raise it with the agency during the administrative proceedings.  (Doc. No. 13 at 16.)  The Commissioner disputes Gearing's readings of *Lucia* and *Freytag*, as well as SSR 19-1p.  (*Id.* at 15-20.)  In addition, the Commissioner directs the Court to the fact that "in the wake of *Lucia*, 34 out of the 35 district courts that have decided the issue have rejected attacks on the validity of an SSA ALJ's appointment where the claimant failed to make the constitutional challenge at the administrative level (although there is a split in two of the districts – the Eastern District of North Carolina and Eastern District of Pennsylvania)."  (Doc. No. 13 at 21-22) (collecting cases).

"It is axiomatic that 'a court should not consider an argument that has not been raised in the agency proceeding that preceded the appeal.'" *Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804, 810 (6th Cir. 2012).  "[C]ourts require administrative issue exhaustion 'as a general rule' because it is usually appropriate under [an agency's] practice' for 'contestants in an adversary proceeding' before it to develop fully all issues there." *Sims*, 530 U.S. at 109.  *Sims*' narrow holding consisted of the finding that issue exhaustion was not required in a request for review by the Appeals Council. *Id.* at 105.  The Supreme Court emphasized that whether a claimant must exhaust issues before the ALJ was not before the Court.  *Id.* at 107.

Five other judges within this district explicitly have rejected Gearing's *Sims* argument.  *See Gilbert v. Comm'r of Soc. Sec.*, — F. Supp. 3d —, No. 3:18CV2026, 2019 WL 2281247, at *2 (N.D. Ohio May 29, 2019), *adopting report and recommendation* ("Gilbert's argument 'overextends *Sims*'s limited holding.'") (quoting *Hutchins v. Berryhill*, 376 F. Supp. 3d 775, 778-79 (E.D. Mich. 2019) (additional citations omitted)); *Williams v. Comm'r of Soc. Sec.*, No. 3:18-cv-1706, 2019 WL 3736660, at *6 (N.D. Ohio May 23, 2019) ("Other courts in this district have already considered and

14

rejected this argument because *Sims* held only that a claimant need not exhaust issues at the Appeals Council level prior to judicial review."); *Wreede v. Comm'r of Soc. Sec.*, No. 3:18CV164, 2019 WL 1324024, at **21-22 (N.D. Ohio Mar. 25, 2019), *adopting report and recommendation*;[7] *Cummins v. Comm'r of Soc. Sec.*, No. 3:18 CV 1892, 2019 WL 2465300, at *2 (N.D. Ohio Mar. 18, 2019) (report and recommendation) ("I find Cummins's reading of *Sims* too broad . . . ."). A number of other courts, including those within the Sixth Circuit, have found that "*Sims* left untouched the general rule that a claimant forfeits a claim on appeal that [he] failed to raise during the administrative process." *Flack v. Comm'r of Soc. Sec.*, No. 2:18-cv-501, 2018 WL 6011147, at *3 (S.D. Ohio Nov. 16, 2018) (collecting cases), *report and recommendation adopted by* 2019 WL 1236097 (Mar. 18, 2019). The Court finds the minority view presented in the non-binding cases cited by Gearing[8] to be unpersuasive.

In *Gilbert*, the Court further distinguished *Sims* on the ground that, in *Sims*, the claimant challenged the ALJ's evaluation of the evidence, which meant "her objections could not materialize until the ALJ issued the decision." *Gilbert*, 2019 WL 396785, at *2. Here, Gearing's "Appointments Clause challenge arose when SSA assigned the ALJ" to his case. *Id.* Gearing, unlike Sims, had the chance to raise his objection to the ALJ. *Id.* And since, as Gearing points out, SSA

---

[7] The Court's Order adopting the Report and Recommendation focused solely on the merits. *Wreede*, 2019 WL 1324024, at *1-7. However, the Report and Recommendation addressed the Appointments Clause challenge. *Id.* at **21-22.

[8] *Culcasure v. Comm'r*, 375 F. Supp. 3d 559 (E.D. Pa. 2019) (finding claimant did not forfeit his Appointments Clause challenge, but even if he had, it would be excused on the ground of futility); *Bizarre v. Berryhill*, 364 F. Supp. 3d 418 (M.D. Pa. 2019) (finding claimant not required to raise his constitutional claim to the ALJ or Appeals Council in the first instance). This Court has previously rejected the reasoning set forth in *Bizarre*. *Gilbert*, 2019 WL 2281247, at **4-5.

15

allowed him to bypass Appeals Council review given the previous remand from this Court, the importance of raising his Appointments Clause challenge to the ALJ was heightened even more.[9]

In *Freytag*, the Supreme Court excused the failure to raise an Appointments Clause challenge to the authority of the special tax court judge below.  501 U.S. at 879.  However, the Supreme Court made clear it was a "rare case." *Id.*  Other courts, including this district, have rejected carrying *Freytag*'s holding over to excuse the failure to raise Appointments Clause challenges in Social Security appeals.  *See Gilbert*, 2019 WL 2281247, at **4-5; *Fortin v. Comm'r of Soc. Sec.*, 372 F. Supp. 3d 558, 564-65 (E.D. Mich. 2019) (rejecting report and recommendation regarding Appointments Clause challenge; adopting alternate findings in report and recommendation).

Gearing's argument under the Supreme Court's decision in *Mathews v. Eldridge* that he may raise a constitutional claim for the first time on appeal to this Court because SSA has no power to adjudicate such a challenge and the topic is inherently beyond the scope of the administrative proceeding also fails.  Gearing's reading of *Eldridge* "sweeps too broadly and ignores subsequent caselaw." *Diane S.P. v. Berryhill*, 379 F. Supp. 3d 498, 527 (E.D. Va. 2019).  First, *Eldridge* concerned specific and "unusual" facts that are not present here.  *Id.*  Second, in *Lucia*, the Supreme Court confirmed that Appointments Clause challenges "should, as a matter of course, be timely presented to the agency involved."  *Id.* (citing *Lucia*, 138 S.Ct. at 2055).  And absent timely presentment, the Supreme Court "indicated in *Freytag* that judicial discretion should be exercised to excuse forfeiture in only 'rare cases.'" *Id.* (citing *Freytag*, 501 U.S. at 879).  Finally, to the extent

---

[9] Gearing states, "[T]he unique procedural posture of this case involving a direct appeal to this Court and skipping Appeals Council review distinguishes this case from any other case in the nation in terms of <u>Lucia</u> challenges in the Social Security disability context." (Doc. No. 11 at 8.)  Even if true, this point underscores, not undercuts, the importance of the need to raise such challenges in the first instance before the ALJ.

Gearing alleges his constitutional claim is collateral to his claim for benefits, the Supreme Court's decision in *Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012), "indicates otherwise." *Id.* at 528 ("'[P]etitioners' constitutional claims are the vehicle by which they seek to reverse' agency action and are '[f]ar from ... wholly collateral ....'") (quoting *Elgin*, 567 U.S. at 22).

Gearing also argues that SSA cannot argue he forfeited his Appointments Clause challenge because "SSR 19-1 explicitly states that relief will be granted on this issue even if the challenge was not raised before the ALJ." (Doc. No. 11 at 7.)  But Gearing mischaracterizes SSR 19-1p.  It states: "The Appeals Council will grant the claimant's request for review in cases where the claimant: (1) Timely requests Appeals Council review of an ALJ's decision or dismissal issued before July 16, 2018; and (2) raises before us (either at the Appeals Council level, *or previously had raised at the ALJ level*) a challenge under the Appointments Clause to the authority of the ALJ who issued the decision or dismissal in this case."  SSR 19-1p, 2019 WL 1324866, at *3 (S.S.A. Mar. 15, 2019) (emphasis added).

In his reply, Gearing notes that it is "interesting to look to the Sixth Circuit's decision" in *Jones Bros., Inc. v. Sec'y of Labor, Mine Safety, and Health Admin.*, 898 F.3d 669 (6th Cir. 2018). (Doc. No. 14 at 4.)  But *Jones Brothers* does not change the analysis.  *See Page v. Comm'r of Soc. Sec.*, 344 F. Supp. 3d 902, 904-05 (E.D. Mich. 2018).  In *Jones Brothers*, the plaintiff raised, but failed to "press," the issue of whether the ALJ appointment procedure was constitutional as applied at the administrative level.  898 F.3d at 677.  The Sixth Circuit found the plaintiff forfeited the Appointments Clause claim but excused the forfeiture under the Mine Act's "extraordinary circumstances" provision given the reasonable confusion on the plaintiff's part regarding the

17

Commission's jurisdiction.[10]  *Id.* at 677-78.   Furthermore, the Sixth Circuit recently reemphasized

that the "extraordinary circumstances" exception came from the Mine Act's statutory text.  *Island*

*Creek Coal Co., et al. v. Bryan, et al.*, — F.3d —, Nos. 18-3680, 18-3909, 18-4022, 2019 WL

4282871, at *8 (6th Cir. Sep. 11, 2018).

Gearing appeared before an ALJ in February 2015 and in April 2018.  The Supreme Court

decided *Lucia* in June 2018.  The ALJ issued his most recent decision in this case in August 2018.

Again, while SSA allowed Gearing to bypass Appeals Council review given his previous Court

remand, he could have – and should have – raised his Appointments Clause challenge to the ALJ.

First, a circuit split on the constitutionality of the appointment of ALJs occurred well before the ALJ

most recently considered Gearing's application for benefits.  *Axley v. Comm'r of Soc. Sec.*, No. 1:18-

cv-1106-STA-cgc, 2019 WL 489998, at *2 n.1 (W.D. Tenn. Feb. 7, 2019) ("By the time Plaintiff

received his final agency decision on March 24, 2017, there was already a split of authority on the

issue of whether SEC ALJs were constitutionally appointed.  *Compare Bandimere v. SEC*, 844 F.3d

1168 (10th Cir. 2016) (finding the appointments unconstitutional), *with Lucia v. SEC*, 832 F.3d 277

(D.C. Circ. 2016) (rejecting the argument that appointments were unconstitutional)).  Second, "a

regulation in effect long prior to the events in question states that claimants may receive an expedited

---

[10] This statutory provision answers the first part of the rhetorical question Gearing posed
in his reply brief: "How can it be that a litigant in an adversarial administrative setting,
where there are specific statutory exhaustion requirements, will be allowed to pursue an
Appointments Clause challenge, but a disability claimant in a non-adversarial
administrative process, where there are no specific statutory or regulatory exhaustion
requirements, will not be allowed to pursue any such challenge?"  (Doc. No. 14 at 4.)

18

appeals process to challenge a 'provision in the law that [the claimant] believe[s] is unconstitutional.'" *Page*, 344 F. Supp. 3d at 905 (citing 20 C.F.R. § 404.924(d)).[11]

The Sixth Circuit's discussion about *Lucia* arguments in a case where the plaintiff failed to raise an Appointments Clause challenge in its opening brief before the Court of Appeals is illuminating with respect to the timing of Gearing's Appointments Clause challenge:

> Island Creek also cannot hold the line on the ground that its Appointments Clause challenge lacked merit until the Supreme Court decided [*Lucia*, 138 S. Ct. 2044]. No precedent prevented the company from bringing the constitutional claim before then. *Lucia* itself noted that existing case law "says everything necessary to decide this case." *Id.* at 2053. The Tenth Circuit, before *Lucia*, held that administrative law judges were inferior officers. *Bandimere v. SEC*, 844 F.3d 1168, 1188 (10th Cir. 2016). And many other litigants pressed the issue before *Lucia*. *See, e.g., Tilton v. SEC*, 824 F.3d 276, 281 (2d Cir. 2016); *Bennett v. SEC*, 844 F.3d 174, 177–78 (4th Cir. 2016); *Burgess v. FDIC*, 871 F.3d 297, 299 (5th Cir. 2017); *Jones Bros.*, 898 F.3d at 672. That the Supreme Court once denied certiorari in a similar Appointments Clause case adds nothing because such decisions carry no precedential value. *See Teague v. Lane*, 489 U.S. 288, 296, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). All in all, Island Creek forfeited this Appointments Clause challenge, and we see no reasoned basis for forgiving the forfeiture.

*Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 257 (6th Cir. 2018).

Accordingly, the Court should find Gearing forfeited his Appointments Clause challenge by failing to raise it before the agency.

**B.      Treating Source Opinion**

Gearing asserts the ALJ once again "improperly rejected" the opinion of treating neurologist

Dr. Kurtz.  (Doc. No. 11 at 3-6.)  Gearing insists that the ALJ rejected Dr. Kurtz's opinion "for nearly the same reasons" as the prior opinion this Court found in error, compounded by the fact that

---

[11] The DIB provision can be found at 20 C.F.R. § 416.1424(d).

SSA failed to further develop the record on remand.  (*Id.* at 4-5.)  Gearing also faults the ALJ's reliance on the state agency reviewing physician's opinion, despite the fact that the state agency physician "effectively offered an erroneous legal conclusion instead of a medical opinion."  (*Id.* at 5.)  In addition, Gearing maintains the ALJ's statement that he failed to seek out additional alternative therapies was false and violated SSR 82-59.[12]  (*Id.*)  Gearing asserts the ALJ also erred in criticizing Gearing's failure to obtain additional injections.  (*Id.*)

The Commissioner maintains the ALJ provided "good reasons" for assigning little weight to Dr. Kurtz's opinions, including: (1) opinions regarding the ultimate issue of disability are reserved to the Commissioner and entitled to no deference; (2) both opinions post-dated Gearing's DLI and did not state what period of time they addressed; and (3) the opinions were inconsistent with the record.  (Doc. No. 14 at 6-10.)  The Commissioner also asserts the ALJ did not err in assigning "great weight" to the state agency reviewing physician's opinions.  (*Id.* at 11.)

As the Sixth Circuit has explained, "'[t]he Commissioner has elected to impose certain standards on the treatment of medical source evidence.'"  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (citing *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)).  Medical opinions are to be weighed by the process set forth in 20 C.F.R. § 404.1527(c), and "[t]he source of the opinion . . . dictates the process by which the Commissioner accords it weight."  *Id*.  "As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a 'nonexamining source'), *id*. § 404.1502, 404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant (a 'treating source') is afforded more weight than that from a source who has examined the claimant but does

---

[12] TITLES II AND XVI: FAILURE TO FOLLOW PRESCRIBED TREATMENT, SSR 82-59, 1982 WL 31384 (S.S.A. 1982).

not have an ongoing treatment relationship (a 'nontreating source'), *id.* § 404.1502, 404.1527(c)(2)."

*Id.*  In other words, "'the regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker.'" *Gayheart,* 710 F.3d at 375 (quoting Soc. Sec. Rul. No. 96–6p,[13] 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996)).

A treating source opinion must be given "controlling weight" if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Gayheart*, 710 F.3d at 376; 20 C.F.R. § 404.1527(c)(2).[14]  However, "a finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009).  Indeed, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[15]  *See also Gayheart*, 710 F.3d at 376 ("If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the

---

[13] SSR 96-6p has been rescinded and replaced by SSR 17-2p, effective March 27, 2017. *See* Soc. Sec. Rul. No. 17-2p, 2017 WL 3928306 at *1 (Soc. Sec. Admin. Mar. 27, 2017).

[14] Revised versions of these regulations took effect on March 27, 2017, and apply to disability claims filed on or after that date.  *See* 82 Fed. Reg. 5844 (March 27, 2017).

[15] Pursuant to 20 C.F.R. § 404.1527(c)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

length, frequency, nature, and extent of the treatment relationship, *id.*, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, *id*. § 404.1527(c)(2)-(6).")

If the ALJ determines a treating source opinion is not entitled to controlling weight, "the ALJ must provide 'good reasons' for discounting [the opinion], reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers v. Comm'r of Soc. Sec*., 486 F.3d 234, 242 (6th Cir. 2007).  *See also Gayheart*, 710 F.3d at 376.  The purpose of this requirement is two-fold. First, a sufficiently clear explanation "'let[s] claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Id*. (quoting *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 544 (6th Cir. 2004)).  Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544. Because of the significance of this requirement, the Sixth Circuit has held that the failure to articulate "good reasons" for discounting a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

Nevertheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence.  *See Harris v. Heckler,* 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley,* 581 F.3d at 406. Moreover, the "treating physician rule" only applies to *medical opinions*.  "If the treating physician

instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, the claimant's RFC, or the application of vocational factors— [the ALJ] decision need only 'explain the consideration given to the treating source's opinion.'" *Johnson v. Comm'r of Soc. Sec.*, 535 Fed. App'x 498, 505 (6th Cir. 2013).  The opinion, however, "is not entitled to any particular weight." *Turner*, 381 Fed. App'x at 493.  *See also Curler v. Comm'r of Soc. Sec.,* 561 Fed. App'x 464, 471 (6th Cir. 2014).

A treating physician's opinion rendered after the DLI "may be considered to the extent [that] it illuminates a claimant's health before the expiration of his insured status." *Nagle v. Comm'r of Soc. Sec.*, 1999 WL 777355, at *1 (6th Cir. Sept. 21, 1999) (*citing Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ).  *See also Morgan v. Comm'r of Soc. Sec.*, 2018 WL 849478, at *10 (S.D. Ohio Feb. 14, 2018). "However, to be given significant weight, this retrospective opinion must be supported by relevant, objective evidence that was contemporaneous to the insured period." *Stark v. Comm'r of Soc. Sec.*, 2016 WL 1077100, at *6 (N.D. Ohio March 18, 2016) (*citing Strong v. Soc. Sec. Admin.*, 88 Fed. App'x 841, 845 (6th Cir. 2004) ).

The ALJ assigned no weight to Dr. Kurtz's opinions addressing the ultimate issue of disability, as that issue is one reserved to the Commissioner.  (Tr. 513.)  The ALJ assigned "limited weight" to the remainder of Dr. Kurtz's opinions:

> All of the doctor's opinions of record were rendered after the relevant period of August 27, 2011, to March 31, 2013. The opinions do not indicate as to what specific periods they address. The doctor used present tense language in all of her opinions, which suggests the opinions reference the doctor's opinion of the claimants then current level of functioning. While the doctor noted that the claimant requires an assistive device for ambulation, her own treatment notes do not reference consistent cane use during the relevant period, and her examinations findings noted no more than an antalgic gait, secondary to pain. (See B1F). The doctor made no mention of cane use in her

23

opinion dated March 20, 2018. (See B12F). In that regard, the opinions are inconsistent. The doctor's own examination findings do not provide a sufficient basis for her opinions generally. The doctor's own examination findings throughout Exhibit BlF have little reference to objective examination findings, aside from an antalgic gait. As to other evidence of record, the claimant's examination findings on October 30, 2013, showed some decreased sensation, but no asymmetrical weakness in the lower extremities. (See B6F/10). The absence of lower extremity weakness undermines the portions of the doctor's opinions regarding weakness and the need for an ambulatory aid, to some extent.

The claimant reported using a cane only occasionally, which is inconsistent with the doctor's relatively extreme finding that he can walk no more than 5 feet without it. (Contrast B2A/4 to B4F). The claimant presented at numerous medical appointments with Dr. Kurtz, and those treatment notes do not refer to cane use. (See BlF). The doctor's reliance on examination findings of antalgic gait and cane use do not support the degree of limitation to which the doctor has opined. While the doctor noted that the claimant would have issues with absenteeism and remaining on-task while at work because of his pain, the record does not support that the claimant has had any hospitalizations or emergency department visits related to pain during the relevant period of August 27, 2011 to March 31, 2013. The doctor also referenced that the claimant [sic] no medication side effects, which further undermines the portions of the opinion that the claimant would have difficulty remaining on-task during the course of the workday. The minimal and infrequent treatment the claimant received during this period does not support that he would have experienced a work-preclusive degree of absenteeism related to treatment.  In fact, the record supports that the claimant avoided treatment during this period based on his dissatisfaction with it. The portions of the doctor's opinions that discuss limitations on lifting, carrying, standing, walking, and sitting, are unsupported by objective medical evidence, including the absence of notable findings in her own treatment notes. (See B1F). The doctor did not provide an explanation for the limitations she provided based on reference to any imaging, testing, or examination findings other than her observations of an antalgic gait. Without a clear explanation linking the limitations to the medical evidence, the doctor's opinions do not provide much useful information when assessing the claimant's residual functional capacity. The undersigned gives limited weight to these opinions to the extent they are consistent with the above residual functional capacity finding, as that finding is supported by the evidence of record, including examination findings, weighted portions of the medical opinions of record, and portions of the claimant's allegations that are consistent  with the medical evidence of record. (See above analysis). The undersigned gives limited weight to

24

> the doctor's determination to sign for a BMV placard for the claimant, because different standards and definitions apply to determine eligibility for a handicap or disability placard than those used by the Commissioner for determining whether a claimant is "disabled" under the Act. For these reasons, and based on this evidence, the undersigned gives limited weight to Dr. Kurtz's opinions of record.

(Tr. 512-14.)

The ALJ provided an extensive discussion of Dr. Kurtz's opinions and – supported by specific citations to the record – the evidence the ALJ determined undercut Dr. Kurtz's opinions. (*Id.*) Inconsistency with the record is a "good reason" under the regulations to assign less weight to a treating physician's opinions. *Gayheart*, 710 F.3d at 376; 20 C.F.R. § 404.1527(c). The decision makes clear the ALJ's overarching issue with Dr. Kurtz's opinions is the lack of support in the record. Indeed, at the hearing, the ALJ expressed to counsel his overall problem with Gearing's claim was the lack of medical evidence during the relevant time period. (Tr. 536-37, 556-59.)

Although Gearing alleges the ALJ violated SSR 82-59 by "falsely claim[ing]" Gearing failed to seek out additional therapies such as aqua therapy despite his testimony that he couldn't afford it, that policy only comes into play when the claimant is found to be under a disabling condition. *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) ("The issue of poverty as legal justification for failure to obtain treatment does not arise unless a claimant is found to be under a disabling condition.") (citation omitted). Here, the ALJ found Gearing was *not* under a disabling condition. (Tr. 506-508.) And to the extent the ALJ considered Gearing's overall lack of treatment, this was proper. *Strong*, 88 F. App'x at 846 ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment.")

Furthermore, although Gearing asserts "the ALJ ignored the contemporaneous clinical evidence confirming [his] difficulties with falls due to leg weakness" (Doc. No. 11 at 6), the ALJ discussed this evidence at length and specifically noted in his analysis of Dr. Kurtz's opinions a notation in the medical records that there was no asymmetrical weakness found in Gearing's lower extremities.  (Tr. 509-10, 514.)

Gearing also makes much of the fact that the ALJ assigned great weight to the state agency reviewing sources' opinions, even though the state agency reviewing physician erroneously applied *res judicata*.  (Doc. No. 11 at 5.)  However, the ALJ acknowledged the error and stated that because of an additional non-exertional limitation, he was not applying *res judicata* to Gearing's RFC.  (Tr. 498-99.)  The ALJ analyzed the state agency reviewing sources' findings and cited to specific medical evidence supporting the remainder of the state agency reviewing sources' opinions.  (*Id.* at 512.)

The ALJ weighed and analyzed the conflicting evidence in determining what weight to assign to Dr. Kurtz's opinions.  While Gearing may have weighed the evidence differently, the ALJ was within the zone of choice and substantial evidence supports the ALJ's decision.

## C.  Step 5 Challenge

Gearing argues that SSA failed to meet its Step 5 burden "because the VE did not provide any job incidence data whatsoever with respect to the relevant time period."  (Doc. No. 11 at 11.)  The VE testified in April 2018, five years after Gearing's date last insured.  (*Id.*)  As Gearing established on cross-examination that the VE's testimony was based on 2018 data, Gearing asserts "there [was] no evidentiary basis of record to support a

26

presumption as to what the job incidence data was for these occupations five years before." (*Id.*)

The Commissioner responds that the VE understood Gearing's DLI was March 31, 2013.  (Doc. No. 13 at 13.)  In addition, the Commissioner asserts that Gearing's counsel "did not question the VE regarding these numbers, or the basis for her testimony, at the hearing," and as such there is "no reason to believe that her testimony was not pertinent to the relevant period."  (*Id.* at 13-14.)  The Commissioner also maintains that "any potential error was harmless," as "[t]here is no reason to believe" the three representative jobs identified by the VE "did not exist in 2013 at approximately the same numbers they existed in 2018."  (*Id.* at 14.)  Further, the Commissioner argues that "even if only a fraction of the number of jobs existed in 2013, this would still constitute a significant number."  (*Id.*)

During the April 2018 hearing, on cross-examination, Gearing's counsel questioned the VE in part as follows:

> BY THE ATTORNEY:
>
> Q    It's correct that in responding to the Judge's hypothetical questions, you didn't consider any factors or limitations beyond those identified by the Judge; correct?
>
> A    Yes, that is correct.
>
> ATTY:  And, Your Honor, I'm not going to ask about 4F because I think the absences and off task questions that you asked kind of captured that.
>
> BY THE ATTORNEY:
>
> Q    It's correct that in responding to the Judge's hypothetical questions that you testified based upon current data?
>
> A    Yes, sir.

(Tr. 564.)

The ALJ found at Step Five that "*[t]hrough the date last insured*, considering the claimant's age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that the claimant could have performed."  (*Id.* at 516) (citing 20 C.F.R §§ 404.1569 and 404.1569a) (emphasis added).  The ALJ relied on the VE's testimony in making this finding.  (Tr. 516-17.)

The ALJ's reliance on 2018 numbers provided by the VE when Gearing's DLI was March 31, 2013 was error.  *See Myers v. Astrue*, No. 4:11cv62, 2012 WL 4050182, at *19 (E.D. Va. July 6, 2012) ("The Court further FINDS that this error is not harmless because, absent vocational evidence to suggest that one or more of these jobs should be classified as unskilled sedentary positions requiring Level 1 reasoning development notwithstanding the DOT descriptions, *or vocational evidence regarding other positions available in significant numbers in the national economy that the claimant could perform as of his date last insured*, the ALJ may have reached a different outcome with respect to the plaintiff's disability determination.") (emphasis added) (citations omitted), *report and recommendation adopted by* 2012 WL 4479971 (E.D. Va. Sep. 28, 2012).  The VE's testimony simply cannot support the ALJ's Step Five finding that, through Gearing's DLI, jobs existed in significant numbers in the national economy that Gearing could perform.  (Tr. 516.)

Contrary to the Commissioner's assertion, Gearing's counsel specifically questioned the VE on the basis for her testimony.  (Tr. 564.)  As Gearing points out, the ALJ could have questioned the VE on redirect to obtain testimony regarding the relevant time period, but did not.  (Doc. No. 14 at 6-7.)  It is well-established the Commissioner cannot cure a deficient

Case: 1:18-cv-02841-PAG  Doc #: 15  Filed:  09/25/19  29 of 31.  PageID #: 855

opinion by offering explanations that were not offered by the ALJ.  Indeed, as courts within this district have noted, "arguments [crafted by defense counsel] are of no consequence, as it is the opinion given by an administrative agency rather than counsel's 'post hoc rationale' that is under the Court's consideration." *See, e.g., Blackburn v. Colvin*, No. 5:12 CV 2355, 2013 WL 3967282, at *8 (N.D. Ohio July 31, 2013); *Cashin v. Colvin*, No. 1:12CV909, 2013 WL 3791439, at *6 (N.D. Ohio July 18, 2013); *Jaworski v. Astrue*, No. 1:10-cv-02936, 2012 WL 253320, at *5 (N.D. Ohio Jan. 26, 2012).  Because the various arguments now advanced by the Commissioner were not articulated by the ALJ as reasons for accepting and relying on the VE's testimony, they are rejected as *post hoc* rationalizations.

The Commissioner bears the burden of proof at Step Five, and failed to meet it here. Remand is required.

**D.    Award of Benefits Request**

Gearing argues that the "unique circumstances" of his case "warrant an outright award of benefits."  (Doc. No. 11 at 12.)  Gearing maintains that he applied for benefits over six years ago, he had an extensive work history, he cannot perform his past relevant work, his treating neurologist provided two functional assessments that Gearing maintains are "consistent with disability," and SSA "did virtually nothing" to develop the record on remand. (*Id.*)  In light of these facts and his remote DLI, Gearing asserts this Court should award him benefits instead of remanding the case back to the Agency.  (*Id.*)  The Commissioner responds that "[e]ven if all of Plaintiff's points are well taken, not all essential factual issues have been resolved in this case," making an award of benefits inappropriate.  (Doc. No. 13 at 15.)

"If a court determines that substantial evidence does not support the Secretary's

29

decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Secy. of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted).  Furthermore, an award of benefits "is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking."  *Id.*

While the Court is sympathetic to the amount of time that has passed since Gearing applied for benefits, the Court agrees with the Commissioner that a judicial award of benefits in this case is inappropriate.  *Faucher* addressed an analogous set of facts: there, the ALJ relied on the testimony of the VE in support of the Step Five finding, but the hypothetical posed to the VE failed to adequately incorporate all of the claimant's limitations.  *Id.* at 174-75.  In addition, the evidence regarding the claimant's impairments was mixed.  *Id.* at 176. Here, as discussed above, there is insufficient evidence regarding whether, as of Gearing's DLI, a significant number of jobs existed in the national economy that Gearing could perform. Furthermore, the evidence regarding Gearing's impairments is mixed.  Therefore, the proper remedy is remand.  *Id.* (reversing lower court's award of benefits and remanding under sentence four of 42 U.S.C. § 405(g)).

## VII.    CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be VACATED and REMANDED for further consideration consistent with this opinion.

_s/Jonathan D. Greenberg_

Jonathan D. Greenberg

United States Magistrate Judge

Date: September 25, 2019

<u>**OBJECTIONS**</u>

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**